FINK, Appellant v. FINK, Respondent

(213 N.W.2d 458)

(File No. 11213. Opinion filed December 31, 1973)

Floia M. Hoagland, Lynn A. Moran, Custer, for appellant.

John F. Murphy, Denis R. Eckert, Donley & Murphy, Elk Point, for respondent.

WOLLMAN, Justice.

This is an appeal by plaintiff from a judgment dismissing on the merits the complaint in her action for divorce.

Plaintiff, who was 27 years old at the time this action was tried in May of 1972, married defendant, who was 40 at the time of trial, on February 2, 1964. There were no children born to the marriage.

The parties lived on a farm in the extreme southeastern tip of South Dakota, some five miles from North Sioux City, South Dakota. In addition to their farming operation, the parties operated a 3.2 beer tavern in North Sioux City.

Plaintiff testified that defendant was hot tempered*, that he had yelled at and cursed her and that he had ridiculed her in front of others to the point where it was embarrassing to her. Plaintiff left defendant in the latter part of October, 1971. Some two months earlier plaintiff had told defendant that she wanted to leave and get a job. Defendant refused to let her go. Plaintiff testified that on the day that she finally did decide to leave, defendant kicked her out of bed, causing her to hit her lip on the dresser. He then threw her out into the living room and ripped off her nightgown, bruising her arms in the process. The following day defendant bought a plane ticket for plaintiff and sent her home to her parents in Rapid City, South Dakota. Plaintiff secured employment in Rapid City and was living there at the time of trial.

Plaintiff's mother testified that defendant called her early one morning during the latter part of October 1971 and told her that he and plaintiff were having trouble and that plaintiff wanted to

---

* Plaintiff testified that defendant had once torn the phone wires out after an argument with a telephone operator who had disconnected him, and that he had once shot one of their dogs who had killed a chicken.

go home to Rapid City. She testified that when plaintiff arrived in Rapid City she was very thin, broken out from nervous hives, had a swollen mouth and had bruises on her arms.

Plaintiff's sister testified that defendant "had cussed" plaintiff and that she had twice seen plaintiff cry in response to defendant's anger at her. She testified that when she saw her sister upon her return to Rapid City in October of 1971 plaintiff's arms were bruised and her lip was cut.

Plaintiff's brother, who had lived with the parties from November of 1969 to April 1, 1970, testified that he was awakened one morning by defendant's, " * * * hollering at her (plaintiff), telling her she was stupid and dumb and didn't know how to manage money because the household budget was loused up." Although this witness testified that defendant has a violent temper, he was unable to give any specific instance wherein this violent temper was manifested.

Defendant's version of the events immediately prior to plaintiff's departure for Rapid City was that he got up one morning and found defendant sitting with her suitcases packed. Defendant went to town and called plaintiff's parents and was informed by plaintiff's father to send plaintiff home to her mother, whereupon defendant made a plane reservation for plaintiff. Defendant denied having a fight with plaintiff before plaintiff left and denied tearing her nightgown off. He explained that her bruises and other injuries were the result of a motorcycle accident which plaintiff had had about a week before she left. (Plaintiff claimed that this incident had occurred in June of 1971 and not shortly before her departure from their home.) He testified that plaintiff had always been a nervous person.

A young girl who had lived with the parties from September of 1969 through October of 1970 testified that she thought the parties " * * * got along great," and that plaintiff had never complained to her that she was being mistreated by defendant. She testified that she had never heard defendant complain about plaintiff's cooking and that she knew of no ridiculing and criticizing of plaintiff by defendant.

After a complete review of the testimony, we are of the opinion that the trial court's finding that the evidence did not show that plaintiff had a cause of action for divorce based upon extreme cruelty is not clearly erroneous. SDCL 15-6-52(a). In re Estate of Hobelsberger, 85 S.D. 282, 181 N.W.2d 455. We have considered the cases cited by plaintiff, including the case of Pfutzenreuter v. Pfutzenreuter, 76 S.D. 276, 77 N.W.2d 563, and conclude that they do not compel a contrary result.

Accordingly, the judgment is affirmed.

All the Justices concur.